WILLIAM McCLEAN, PLAINTIFF IN ERROR, v. THE STATE, DEFENDANT IN ERROR.

A person carrying on the business of book-making or betting upon horse races, on the grounds of a horse-racing association, although authorized by the association and paying a rent or fee for the privilege, is indictable for maintaining a public nuisance.

In error from the Supreme Court.

For the plaintiff in error, *Wm. H. Vredenburgh.*

For the defendant in error, *C. Haight* and *J. W. Swartz.*

The opinion of the court was delivered by

THE CHANCELLOR. The plaintiff in error was indicted for maintaining a public nuisance. The form of the indictment was the ordinary one for keeping a disorderly house, and he was convicted thereon. The alleged offence was the carrying on by him, upon the grounds of the Monmouth Park Association (a society for horse-racing in the county of Monmouth), during the racing season (in July, August and September) of 1885, from day to day, the business of "book-making" or betting upon horse races to take place upon the race course of that association there. He carried on the business in a box or booth, within the covered enclosure of the association under what is called the grand stand. He was authorized by the association to carry on the business there, and paid a rent or fee to them for the privilege. The race course and the box or booth were places of public resort, and were frequented during the racing season, by great numbers of persons, who were invited by McClean to his box or booth to bet upon the races. There were a number of these boxes in the same place, occupied by other persons, who carried on there the same business. The defendant thus kept a place of public resort for the purpose of betting upon the result of horse

McClean v. State.

races.    Under the fifty-sixth section of the act for the punish-
ment of crimes (*Rev. p.* 237), betting upon horse races was a
criminal offence.    While the supplement to that act, passed
in 1880 (*Pamph. L., p.* 195), so amended that section as to re-
peal the provision making such betting a misdemeanor, it did
not repeal or affect the provisions of the act to prevent gaming
(*Rev., p.* 458), which declared all wagers, bets or stakes, made
to depend upon any race, to be unlawful.    The place kept by
McClean was kept in order that the public might resort
thereto and engage in the unlawful practice of betting upon
horse races, and such practices were habitually carried on
there.    Any place of public resort in which illegal practices
are habitually carried on is a public nuisance, and a person
who keeps such a place is guilty of an indictable misde-
meanor.    *State* v. *Williams,* 1 *Vroom* 102.    The keeping of a
common gaming-house is indictable at the common law as
being injurious to the public morals.    The mere fact that the
legislature has repealed the enactment by which betting upon
horse races was made an indictable offence obviously does not
render the practice of betting upon horse races any the less
injurious to public morality than it was before.    Indeed, the
provisions of the act of 1880, above referred to, are in them-
selves evidence that the legislature regards such betting as an
offence against public morals.

The judgment of the Supreme Court should be affirmed.

*For affirmance* — THE CHANCELLOR, DIXON, MAGIE,
REED, SCUDDER, BROWN, COLE, McGREGOR, PATERSON,
WHITAKER.    10.

*For reversal*—None.